**PROGRESSIVE NORTHERN INSURANCE COMPANY, Defendant Below, Appellant,**

v.

**William J. MOHR, Plaintiff Below, Appellee.**

No. 243, 2011.

Supreme Court of Delaware.

Submitted: April 4, 2012.
Decided: June 21, 2012.

Steele, C.J., filed dissenting opinion.

Daniel P. Bennett, Esquire (argued), of Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware; for Appellant.

Keith E. Donovan, Esquire (argued), of Morris James LLP, Dover, Delaware; for Appellee.

B. Wilson Redfearn and Nicholas M. Tyler, Esquires, of Tybout, Redfearn & Pell, Wilmington, Delaware; Amicus Curiae for Appellant.

Richard A. Zappa and Erika R. Caesar, Esquires, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Amicus Curiae for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice (for the majority):

Delaware's automobile insurance statute requires regulated insurers to offer a minimum amount of insurance on automobiles that are registered in the State.[1] On one subject, however, the statute is unclear: must an automobile insurer provide personal injury protection ("PIP") coverage to an insured where that person is struck in Delaware, as a pedestrian, by a car (the "striking car") that is insured in Delaware?[2] This case presents that question of first impression.

William Mohr, the plaintiff-below-appellee, was struck in Delaware by a car that was insured in Delaware. Mohr recovered the minimum $15,000 coverage limit from the carrier that insured the striking car. But, Mohr also sought to recover from Progressive Northern Insurance Company, the defendant-below-appellant ("Progressive"), which had sold an automobile insurance policy to Mohr's mother. Under the Progressive policy, Mohr's mother was the named insured, and Mohr was insured as a member of his mother's household. The Progressive policy, by its terms, did *not* cover Mohr as a pedestrian in the instant circumstances. The Superior

---

1. 21 *Del. C.* § 2118.

2. For ease of reference, we sometimes refer to that PIP coverage in this Opinion as "pedestrian PIP benefits."

Court held, nonetheless, that Mohr was entitled to recover under the Progressive policy, because insofar as it denied PIP coverage, that policy conflicted with Delaware's automobile insurance statute which—the Superior Court found—mandated such coverage. The court ordered Progressive to pay Mohr the $85,000 difference between the $15,000 he recovered from the insurer of the striking car and the $100,000 PIP coverage limit under his mother's Progressive policy. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The pivotal facts are undisputed. Mohr was struck by a car in Seaford, Delaware, while a pedestrian, on February 2, 2008. The automobile that struck Mohr was registered and insured in Delaware. Mohr was seriously injured, and was paid the statutory minimum $15,000 limit under the policy of the carrier that insured the striking car. That amount, however, did not adequately compensate Mohr for his injuries.

Mohr's mother owned a Delaware-registered and insured automobile. The mother's automobile was insured under a Progressive policy that had a $100,000 PIP benefits limit,[3] and that relevantly provided pedestrian PIP benefits to "household members" of the "named insured."[4] Mohr, who was a "household member" of the "named insured" (his mother), sought

to recover the $85,000 difference between the amount he received from the insurer of the striking car, and the $100,000 limit under his mother's policy. Progressive denied the claim on the ground that its policy did not provide pedestrian coverage to insureds who were struck in Delaware by a Delaware-insured automobile.

It is undisputed that Mohr, even though an insured under his mother's policy, was not covered. We pause to explain why. The Progressive policy insured Mohr's mother and members of her household (including Mohr) as pedestrians, but *only* where the insured pedestrian is struck by a car that is *not* insured in Delaware.[5] In this case, the striking car was insured in Delaware. Therefore, Progressive's policy, by its terms, did not cover Mohr in the circumstances of this case.

Mohr sued Progressive in the Superior Court for a determination that Progressive was required by statute to provide PIP coverage for his injuries, whether or not its insurance contract so provided. Progressive defended on the basis that Delaware's automobile insurance statute does not require an insurer to provide PIP benefits to an insured pedestrian who is struck in Delaware by a Delaware-insured car.

In an opinion issued on September 27, 2010, the Superior Court denied Progressive's motion for summary judgment and awarded Mohr $85,000. The court held

3. That limit exceeded the required $15,000 statutory minimum. 21 *Del. C.* § 2118(a)(2)(b).

4. Unless the context indicates otherwise, references to "insureds" in this Opinion include both named insureds and their household members.

5. That provision in Progressive's policy was based on subparagraph (d) of 21 *Del. C.* § 2118(a)(2), which provides:

d. The coverage required by this paragraph shall also be applicable to the named insureds and members of their households for accidents which occur through being injured by an accident with any motor vehicle other than a Delaware insured motor vehicle while a pedestrian or while occupying any registered motor vehicle other than a Delaware registered insured motor vehicle, in any state of the United States, its territories or possessions or Canada.

that Delaware case law "support[s a finding] that Plaintiff may be entitled to the monetary difference in the two policies [the striking car's and the pedestrian's]," and that to "hold otherwise would limit no-fault coverage beyond what the legislature envisioned." [6] Under Progressive's construction of the statute, a recovery of benefits would depend on whether the striking car is insured in Delaware, regardless of the amount of PIP coverage for which a premium was paid. The Superior Court stated that if Progressive's position were adopted, then "should [a pedestrian] have the misfortune of being struck by one of these ill-fated, lesser-insured Delaware vehicles, she must resign herself to that vehicle's limited coverage. [That] crapshoot cannot be what the legislature intended for Delaware residents." [7]

This appeal followed.

## ANALYSIS

### I. *The Contentions and the Applicable Standard*

█ In this appeal, Progressive claims that the Superior Court reversibly erred, because by statute Progressive was not required to provide an insured pedestrian PIP benefits where, as here, the insured is struck in Delaware by a Delaware-insured automobile. All parties agree that the Progressive policy, by its terms, did not provide pedestrian PIP coverage in those circumstances. The sole legal question presented is whether Progressive was statutorily mandated to provide such coverage. That requires us to decide whether Delaware's automobile insurance statute—in particular, subparagraph (e) of 21 *Del. C.* § 2118(a)(2)—requires an insurer to provide PIP coverage under a Delaware policy for an insured who is injured, as a pedestrian, in Delaware by a Delaware-insured car. If the statute is found to so require, then the Superior Court's judgment awarding Mohr $85,000 of PIP benefits under the Progressive policy must be upheld. [8]

█ A trial court's interpretation of a statute presents, on appellate review, a question of law that this Court reviews *de novo*. [9] "The goal of statutory construction is to determine and give effect to [the] legislative intent." [10] When a statute is interpreted, "[u]ndefined words ... must be given their ordinary, common meaning." [11] Those words "should not be construed as surplusage if there is a reasonable construction which will give them meaning." [12] Courts "must ascribe a purpose to the use of statutory language, if reasonably possible." [13] Where the statutory language is clear on its face and is fairly susceptible to only one reading, the unambiguous text will be construed accordingly, unless the result is so absurd

6. *Mohr v. Progressive Northern Ins. Co.,* 2010 WL 4061979 at *3 (Del.Super. Sept. 27, 2010).

7. *Id.*

8. *Cf. State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557, 561 (Del.1988) (refusing to reform statutorily-inconsistent exclusion, found contrary to public policy, solely to the minimum limit amount mandated by statute, due to absence of the "full agreement of the parties").

9. *CML V, LLC v. Bax,* 28 A.3d 1037, 1040 (Del.2011).

10. *LeVan v. Independence Mall, Inc.,* 940 A.2d 929, 932 (Del.2007) (citation omitted).

11. *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 900 (Del.1994).

12. *Chase Alexa, LLC v. Kent County Levy Court,* 991 A.2d 1148, 1152 (Del.2010) (citing *Oceanport Indus., Inc.,* 636 A.2d at 900).

13. *Chase Alexa, LLC,* 991 A.2d at 1152.

that it cannot be reasonably attributed to the legislature.[14] Where, however, the statutory text is ambiguous, the court will resort to other sources, including relevant public policy, "for guidance [as] to [the statute's] apparent purpose."[15] And, in carrying out its interpretive task, this Court will "read each section [of the statute] in light of all the others to produce a harmonious whole."[16]

The practical consequence of the issue presented is that if Progressive's interpretation of 21 *Del. C.* § 2118(a)(2)(e) is correct, then PIP coverage for a pedestrian injured in Delaware by a Delaware-insured striking car, will be recoverable only from the policy insuring the striking car. To simplify the statutory analysis in this Opinion, we note—and the reader may assume—that this case is indistinguishable from the situation where Mohr himself purchases the Progressive policy in his own name, as opposed to being insured as a "household member" of the "named insured" (here, his mother).

Underlying this dispute is the fact that an insured claimant will have paid a higher premium to purchase an insurance policy whose limits exceeds the $15,000 statutory minimum. To purchase only the minimum coverage, the premium would be less. Where the policies insuring the injured pedestrian and the Delaware-insured striking car, respectively, carry the same minimum coverage limit, no dispute arises, because the "no double recovery" principle may properly limit the injured pedestrian's

recovery to the limit under the policy insuring the striking car.[17] Under Progressive's reading of the statute, however, where an insured chooses to purchase additional, higher coverage and then is later struck and injured, as a pedestrian, in Delaware by a Delaware insured automobile, the insured pedestrian cannot not receive the incremental benefit of the higher coverage under his own policy. At stake, therefore, is the insured pedestrian's ability to recover the difference between the minimum PIP coverage under the policy insuring the striking car (here, $15,000) and the higher PIP coverage afforded under the separate policy insuring the pedestrian (here, $100,000). Here, that difference was $85,000.

## II. *The Statutory Construction Issue*

The statutory construction issue presented requires us to decide whether: (1) subparagraph (e) of 21 *Del. C.* § 2118(a)(2) is plain on its face and susceptible only to the meaning Progressive ascribes to it— *i.e.*, that coverage for pedestrians is mandated and available only from the striking car's insurer—or (2) whether the statute is also reasonably susceptible to the opposite interpretation advocated by Mohr and adopted by the Superior Court. If the statute is reasonably susceptible to both interpretations, then it must be deemed ambiguous. In that case, the interpretation that best furthers the legislative pur-

---

14. *CML V*, 28 A.3d at 1041 (citing *LeVan*, 940 A.2d at 933).

15. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank and Trust Co.*, 28 A.3d 1059, 1070 (Del.2011) (citation omitted).

16. *CML V*, 28 A.3d at 1041 (citing *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del.2011)).

17. This Court has previously ruled that a policy exclusion for a "double recovery" under the insured's policy—of the amount of coverage provided under the striking car's policy—is permissible under the statute. *See generally, Gonzalez v. State Farm Mut. Auto. Ins. Co.*, 683 A.2d 59 (Del.1996).

poses underlying the Delaware automobile insurance statutory scheme must prevail.

## A. The Coverage Mandate of 21 *Del. C.* § *2118(a)(2)(e) is Ambiguous*

Our analysis of the first issue, whether subparagraph (e) is ambiguous, starts with 21 *Del. C.* § 2118(a)(2). That provision requires that automobiles registered in Delaware must carry insurance to compensate "injured persons for reasonable and necessary expenses" arising out of automobile accidents.[18] Subparagraph (e) of Section 2118(a)(2) ("subparagraph (e)") provides:

> The coverage required in this paragraph shall apply to pedestrians only if they are injured by an accident with any motor vehicle within the State except as to named insureds or members of their households to the extent they must be covered pursuant to subparagraph d. of this paragraph.

Unlike subparagraphs (c) and (d) of Section 2118(a)(2),[19] subparagraph (e) does not specify whether its coverage mandate applies to an insured pedestrian's insurance policy, or to the striking car's insurance policy, or to both. Progressive claims that subparagraph (e)'s coverage mandate can only be read (i) to regulate the insurance policy covering the striking car, and (ii) to limit geographically the pedestrian PIP benefits mandated by subparagraph (c)—

by restricting subparagraph (c)'s coverage mandate to accidents that occur in Delaware. And subparagraph (c), Progressive argues, applies by its terms only to the striking car. That interpretation, Progressive claims, is compelled when subparagraph (e) is read together with subparagraph (c). Subparagraph (c) provides:

> The coverage required by this paragraph shall be applicable to each person *occupying such* [insured] *motor vehicle* and to any other person injured *in an accident involving such* [insured] *motor vehicle,* other than an occupant of another motor vehicle.[20]

We agree that Progressive's interpretation is a reasonable construction of the statute. Subparagraph (c) explicitly mandates coverage for injured pedestrians *only* from the policy that insures the *striking car* (*i.e.,* "any other person injured in an accident involving *such* [insured] *motor vehicle* ").[21] Subparagraph (c) contains no geographic limitations and subparagraph (e), which immediately follows subparagraph (d), imposes certain geographic limitations. Progressive's approach may be expressed syllogistically as follows: (i) Subparagraph (c)'s mandate is limited to the insurance policy covering the striking car; (ii) Subparagraph (e) is intended *solely* to limit geographically the coverage mandated by subparagraph (c); and (iii)

---

**18.** 21 *Del. C.* § 2118(a)(2)(a).

**19.** As more fully discussed *infra,* subparagraph (c)'s coverage mandate applies only to the policies of *striking cars* (*i.e.,* cars that are involved in the injury-causing accident). Subparagraph (d)'s coverage mandate applies to the policies covering "named insureds" and their household members, where they are injured in an accident involving a non-Delaware insured automobile either as pedestrians, or as occupants of a non-Delaware-insured automobile.

**20.** Italics added.

**21.** *Accord, Wisnewski v. State Farm Mut. Auto. Ins. Co.,* 2005 WL 697945 at *1 (Del.Super. Feb. 14, 2005) ("To constitute an 'accident involving *such* motor vehicle,' a casual connection is required between the use of the vehicle and the injury.") (citing *Gray v. Allstate Ins. Co.,* 668 A.2d 778, 780 (Del.Super.1995) ("On several occasions, this Court has discussed the causal nexus between an injury and an automobile accident which is required to trigger coverage *under* § 2118(a)(2)(c).")) (italics added).

therefore, subparagraph (e)'s coverage mandate is necessarily limited to the policy covering the striking car.

But, Progressive's construction ·is not the only reasonable interpretation, for three separate reasons. First, subparagraph (e), which is claimed to modify subparagraph (c), makes no reference at all to subparagraph (c).[22] The only even arguable textual link between the two subparagraphs is the word "only" in subparagraph (e). That word (Progressive argues) signals that subparagraph (e) operates solely to limit, rather than to expand, coverage. That conclusion does not inexorably follow from the statutory text, however.

Second, Progressive's narrow focus on subparagraph (c) ignores and gives no effect to contrary language found in subparagraph (e)—specifically, that the *"coverage required in this paragraph shall apply to* pedestrians only if they are injured by an accident with any motor vehicle within the State...."[23] The quoted italicized language is substantively identical in both subparagraphs (c) and (d).[24] Progressive acknowledges that both provisions expand—rather than limit—coverage.[25]

Third, subparagraph (c) expressly requires that the insured automobile be involved in striking the pedestrian. Subpar-

agraph (e) does not. Subparagraph (c) mandates automobile insurance coverage for pedestrians injured in an accident "involving *such* motor vehicle." That language expressly requires that the insured automobile be involved in the accident. That requirement necessarily excludes policies insuring automobiles that are *not* involved in the accident, even if the injured pedestrian is an insured under such a policy.[26] Subparagraph (e), however, refers broadly to *"any* motor vehicle," and nowhere limits the pedestrian's right to recover under an automobile insurance policy insuring him, in cases where that insured automobile is *not* involved in the accident.

The different language employed by these two subsections cannot be viewed as accidental or inconsequential.[27] The legislative choice of the word "any" in subparagraph (e) reasonably could have been intended to expand the coverage mandate beyond that provided by subparagraph (c), which addresses only—and is limited to—the policy insuring the striking car. That is, subparagraph (e) can reasonably be read to require that Delaware automobile insurance policies cover insured pedestrians who are injured in Delaware by "any motor vehicle."

---

22. The legislature did choose to refer specifically to subparagraph (d) in the text of subparagraph (e).

23. Italics added.

24. Specifically, subparagraph (c) states "[t]he coverage required by this paragraph shall be applicable to...." and subparagraph (d) states that the "coverage required by this paragraph shall also be applicable to...."

25. Progressive describes subparagraph (c) as where "the Delaware legislature *sets forth* the coverage applicable to occupants and others (including pedestrians) involved in an accident with an insured motor vehicle." (italics

added). Moreover, the insurer states, "[subparagraph (d)] speaks to *additional* coverage provided to named insureds and members of their household," whereas subparagraph (e) *"limits* those benefits that are required ... in subparagraph [(c)]." (italics added).

26. *See supra* note 21.

27. *Dewey Beach Enter., Inc. v. Bd. of Adjust. of Tw. of Dewey Beach,* 1 A.3d 305, 307–08 (Del.2010) ("[W]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning, and courts must ascribe a purpose to the use of statutory language, if reasonably possible.") (citation omitted).

Because subparagraph (e) is susceptible to two reasonable yet different interpretations, it is ambiguous.

## B. *A Response to the Dissenting Opinion*

The Dissent forcefully and repeatedly argues that there can be but one reasonable reading of the statutory scheme: namely, that subparagraph (d) is unambiguously the *only* statutory provision that addresses PIP coverage for insured pedestrians; that subparagraph (d) does not mandate coverage for pedestrians struck by a Delaware-insured car; and by that omission, the General Assembly "explicitly eschew[ed]" mandating such coverage.[28] The Dissent asserts that subparagraph (e) can only reasonably be read to impose a geographic restriction on the coverage mandate provided by subparagraph (c).

The Dissent's reasons only buttress a proposition that we readily concede—that Progressive's interpretation of the statute is reasonable. The issue, however, is whether it is the *only* reasonable interpretation. It cannot be. That contention, no matter how often or how emphatically repeated by the Dissent, cannot obviate the existence of a reasonable, alternative reading of subparagraphs (d) and (e). Under that alternative reading, subparagraph (d) is not the sole and exclusive source of coverage of insured pedestrians. It may also reasonably be read to address a broader set of circumstances that involve non-Delaware insured cars, because subparagraph (d) mandates coverage for Delaware insureds—whether as occupants or as pedestrians—who are injured in accidents involving a non-Delaware insured car. And, for the reasons stated *supra,* subparagraph (e) is also reasonably read to require coverage of insured pedestrians who are struck in Delaware by a Delaware-insured automobile.[29] That criticism erroneously presupposes that only subparagraph (d) "actually governs coverage for injuries to insured pedestrians."[30]

To summarize, the Dissent's analysis does not come to grips with the reasoning that establishes that subparagraph (e) can reasonably be read in an alternative way that would mandate coverage in the circumstances at bar. That interpretation conflicts with Progressive's also-reasonable interpretation. Being subject to two different reasonable yet inconsistent interpretations, subparagraph (e) is therefore ambiguous and requires a deeper analysis that includes resort to the tools of judicial construction.

---

**28.** Dissenting Op. at 510–11. What is hard to square with this reasoning is the Dissent's accusation that our interpretation "import[s] a new form of underinsured motorist coverage for personal injury protection." Dissenting Op. at 509. That simply cannot be so, given the legislative decision to require the *same form of coverage* for accidents involving non-Delaware insured cars.

**29.** Nor is it accurate for the Dissent to assert that our contrary view "fails to recognize" that "subparagraph (c) governs situations when the insured hits a pedestrian while subparagraph (d) governs situations when the insured *is* the injured pedestrian." Dissenting Op. at 505–06. Also inaccurate is its characterization of our decision as "choos[ing] to recraft" the automobile insurance statute. Dissenting Op. at 512. That argument presupposes that the General Assembly has clearly formulated its intent. It did not. In defining the scope of no-fault coverage, the General Assembly instead chose to use language that lends itself to two opposite-yet-reasonable interpretations. Accordingly, the result we reach represents our best effort to *formulate,* as an original matter, what the General Assembly intended despite its "careless[ ] draft[smanship]" of the statute (to use the Dissent's words), Dissenting Op. at 506, not to "recraft" an already-existing construct whose meaning is clear beyond peradventure.

**30.** Dissenting Op. at 504–05.

### C. The Superior Court's Interpretation *Furthers the Underlying Statutory Purpose*

Because it is ambiguous, 21 *Del. C.* § 2118(a)(2)(e) must be construed in a manner that best furthers the legislative purpose and public policy goals that underlie the enactment of Delaware's automobile insurance statutory scheme.[31] The question thus becomes: which interpretation of subparagraph (e) best furthers the legislative purpose and policy goals—Progressive's or Mohr's?

■ An important public policy goal of the automobile insurance statute is to promote "full compensation to all victims of automobile accidents."[32] A related goal is to "encourag[e] the Delaware driving public to purchase more than the statutory minimum amount [of coverage]."[33] In furtherance of these purposes, this Court has held that, "[i]n the absence of express legislative authority, no policy exclusions affecting statutory minimum coverage will be recognized."[34] In our view, that principle also informs the proper construction of ambiguous automobile insurance statutory provisions that are claimed to deny coverage.[35]

Progressive contends that "Delaware courts have regularly upheld policy provisions that deny 'excess' benefits as not being violative of public policy." For support, Progressive cites two Superior Court decisions, neither of which involved the construction of a statutory provision judicially determined to be ambiguous.[36] That Delaware courts have previously upheld specific policy exclusions that do *not* violate the automobile insurance statute does not advance the inquiry here, which is: what is the proper construction of provisions in that statute that are found to be ambiguous?

In *Nationwide Gen. Ins. Co. v. Seeman*,[37] this Court held that the public policy underlying the statute "favors *full* compensation to all victims of automobile accidents" and encourages "the Delaware driving public to purchase *more* than the statutory minimum amount [of coverage]."[38] Progressive urges that *Nation-*

---

**31.** *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007) ("The goal of statutory construction is to determine and give effect to legislative intent.").

**32.** *Nationwide General Ins. Co. v. Seeman*, 702 A.2d 915, 918 (Del.1997) (declaring void, on public policy grounds, an exclusion limiting coverage to household members to statutory minimum rather than otherwise applicable policy limit).

**33.** *Id.*

**34.** *Harris v. Prudential Property & Cas. Ins. Co.*, 632 A.2d 1380, 1381–82 (Del.1993).

**35.** *See*, 21 *Del. C.* § 2118(e) (requiring insurance policies "purporting to satisfy" the statute's requirements to contain a provision "which states that, notwithstanding any of the other terms . . . of the policy, the coverage afforded shall be at least as extensive as the minimum coverage required by this section").

**36.** *Mason v. State Farm Mut. Auto. Ins. Co.*, 1997 WL 524129, at *2–3 (Del.Super. July 21, 1997) (upholding "regular use" exclusion under insured's policy where "PIP coverage meeting the statutory requirements was . . . paid out *to the limits of the coverage* as required under section 2118(a)") (italics added); *Webb v. State Farm Mut. Auto. Ins. Co.*, 1993 WL 80634, at *4 (Del.Super. March 17, 1993) ("refus[ing] to extend coverage"—under a "convoluted reading" of subparagraph (d)— for injuries to the insured that she sustained while occupying her other, uninsured Delaware-registered automobile, because the insured "simply . . . decid[ed] to save the cost of purchasing insurance on [that] car").

**37.** 702 A.2d 915 (1997).

**38.** *Id.* at 918 (italics added).

*wide* is distinguishable because the disputed policy provision in that case concerned "liability coverage, not PIP benefits," and applied to household members of the named insureds, but not the named insureds themselves. Those are distinctions without a difference.

First, *Nationwide* establishes an important purpose of the automobile insurance statute, which informs our statutory construction analysis. In *Nationwide,* the disputed policy carried a $100,000 limit of liability coverage "for property damage and bodily injury" arising from a car accident. The insured's teenage son, who was injured while riding as a passenger with his insured father, filed a claim against his father's Nationwide policy. That policy contained a "modified" household exclusion that limited coverage for the insured's household members (the son) to the $15,000 statutory minimum. That exclusion, we held, violated the public policy underlying 21 *Del. C.* ch. 29 and also Section 2118,[39] because it was inconsistent with the General Assembly's "public policy [goal of] ... affording opportunities for acquiring *more* than the statutorily mandated minimum amount [of coverage]."[40]

Second, Progressive's attempt to distinguish *Nationwide* on factual grounds is fatally undercut by *Bass v. Horizon Assurance Co.,*[41] an earlier decision of this Court upon which the *Nationwide* court relied. *Bass* involved PIP benefits, not liability coverage. *Nationwide* cited *Bass* as support for its holding that Nationwide's modified policy limiting the son's benefits to the statutory minimum—as opposed to the higher limit of coverage purchased by the insured father—contravened public policy.[42]

Nor are we persuaded by Progressive's attempt to distinguish *Nationwide* on the basis that there the insurer (Nationwide) "was attempting to treat named insureds differently than other [household members]"—whereas here the insurer (Progressive) is treating them the same (*i.e.,* denying additional coverage to both). As our case law makes clear, an important policy underlying Section 2118 is to encourage the purchase of "more than the statutorily mandated minimum amount" of coverage. That policy, we conclude, is best furthered by upholding the statutory interpretation endorsed by the Superior Court here.[43]

*Nationwide, Bass* and other decisions of this Court[44] establish that the "fundamen-

---

**39.** *Id.* at 915 (citing as "Delaware's Financial Responsibility Laws" 21 *Del. C.* § 2118 and 21 *Del. C.* Ch. 29).

**40.** *Id.* at 918 (italics added).

**41.** 562 A.2d 1194, 1196 (Del.1989) (describing relevant exclusion as "incompatible with the no-fault nature of PIP coverage").

**42.** *Nationwide,* 702 A.2d at 918, n. 4 ("This Court's position that these exclusions violate public policy regardless of any modification for the statutory minimum [limit] was reiterated when we followed *Wagamon* in *Bass v. Horizon Assurance Company.*").

**43.** *Nationwide,* 702 A.2d at 918 ("The General Assembly intended [to] ... afford[ ] opportunities for acquiring more than the statutorily

mandated minimum amount of automobile insurance coverage.") (citing 21 *Del. C.* § 2118(d) ("Nothing in this section shall be construed to prohibit the issuance of policies providing coverage more extensive than the minimum coverages required by this section or to require the segregation of such minimum coverages from other coverages in the same policy.")).

**44.** *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557 (Del.1988), for example, states that:

The Delaware Financial Responsibility Law mandates a *system of insurance* intended to protect and compensate persons injured in automobile accidents. This law requires motorists to purchase, and insurance car-

tal purpose" of 21 Del. C. § 2118(a), and of 21 Del. C. ch. 29 generally, is to compensate fully victims of car accidents.[45] One way to achieve that purpose is to "encourag[e] the Delaware driving public to purchase more than the statutory minimum amount [of coverage]."[46] Those related goals are particularly intertwined in a case such as this where, to obtain "full compensation," a pedestrian victim of a car accident will need access to the higher limit of the insurance policy coverage that the pedestrian himself (or a relative) has purchased. The construction advocated by Mohr, and approved by the Superior Court, advances the related goals of full compensation of car accident victims and of encouraging policy holders to purchase that protection—in the form of higher coverage limits—for themselves and their household members. The interpretation advocated by Progressive would have the opposite effect—of discouraging the insured from acquiring coverage needed to provide full protection for himself and his family.

For these reasons, we hold that subparagraph (e) of 21 *Del. C.* § 2118(a)(2) must be construed to mandate PIP coverage of insured pedestrians in the circumstances presented here.[47] To hold otherwise

would deny Delaware residents, without any clear legislative basis,[48] the "opportunit[y] for acquiring more than the statutorily mandated minimum amount"[49] of pedestrian PIP coverage in the circumstance where they would most likely need it—being struck on a Delaware road by a Delaware-insured car. Such a legislatively-unsanctioned benefits limitation would run counter to the fundamental purpose of Section 2118 "to [fully] protect and compensate all persons injured in automobile accidents."[50]

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

STEELE, Chief Justice dissenting:

On February 8, 2008, William Mohr jumped out of a moving Jeep, which then ran over him. Mohr attempted to recover no fault personal injury protection benefits under his mother's insurance policy, but Progressive denied his claim. The trial judge held that Progressive's policy violated 21 *Del. C.* § 2118 by failing to cover insured pedestrians struck by Delaware insured vehicles and ordered Progressive to pay $85,000 in benefits. The Majority

---

ries to provide, *both liability and no-fault compensation coverage.*
*Id.* at 560 (citing 21 Del. C. § 2118(a)) (italics added).

**45.** *Hudson v. State Farm Mut. Ins. Co.,* 569 A.2d 1168, 1171 (Del.1990) ("[T]he fundamental purpose of Delaware's financial responsibility laws is to protect and compensate all persons injured in automobile accidents.") (italics added).

**46.** *Nationwide,* 702 A.2d at 918.

**47.** *Cf., Selective Ins. Co. v. Lyons,* 681 A.2d 1021, 1025 (Del.1996) ("[A] liberal definition of occupant is applied [in subparagraph (c)] so that the injured insured will be compensat-

ed without strict scrutiny of the physical location of the insured.").

**48.** *Compare Harris v. Prudential Property & Cas. Ins. Co.,* 632 A.2d 1380, 1381–82 (Del. 1993) ("In the absence of *express legislative authority,* no policy exclusions affecting statutory minimum coverage will be recognized.") (italics added), *with Selective Ins. Co.,* 681 A.2d at 1025 ("An exclusion based on an *explicit statutory allowance* cannot be disfavored as contrary to the statute's underlying purpose.") (italics added) (citation omitted).

**49.** *Nationwide,* 702 A.2d at 918.

**50.** *Hudson v. State Farm Mut. Ins. Co.,* 569 A.2d 1168, 1171 (Del.1990).

finds no error and affirms. I respectfully dissent because:

(1) the General Assembly in subparagraph (d) of 21 *Del. C.* § 2118(a)(2) intentionally mandated no fault personal injury protection coverage for insured pedestrians struck by non-Delaware insured vehicles only—explicitly eschewing extending the mandate to Delaware insured vehicles;

(2) this Court's desired policy judgments cannot override the General Assembly's intentional, rational, and unambiguous decision to distinguish between Delaware and non-Delaware insured vehicles when mandating limits on the scope of no fault coverage;

(3) broad public policy statements in a statute's preamble do not govern the specific and explicit text of an unambiguous statutory provision; and,

(4) the Majority's attempt to analogize mandated no fault coverage (personal injury protection) to mandated fault coverage (bodily injury and underinsured/uninsured motorist coverage) ignores: (a) the interrelationship and distinction between fault and no fault mandated coverage; (b) the fact that Delaware is a hybrid no fault coverage state and that only the General Assembly through gathering and analyzing legislative facts can assess mandated coverages' effect on the willingness of insurance carriers to offer insurance coverage in the state and the costs to consumers of mandated expansive coverage.

## I. Facts

Around 10:25 p.m. on February 8, 2008, William Mohr and Courtney Brittingham were standing in a Seaford, Delaware parking lot arguing about who should drive. According to the police report, Brittingham stated that they had been drinking since 6:00 p.m. She recalled that Mohr had the keys to the Jeep and the two of them got in, but she continued insisting that Mohr not drive. Brittingham repeatedly told Mohr to get out of the Jeep, but he instead left the parking space and turned left, flooring it while headed toward a fence. The Jeep collided with a four foot metal chain link fence, dragging the fence for 15 feet. Brittingham continued to tell Mohr to get out of the Jeep, so Mohr opened the door and jumped out. Brittingham then attempted to stop the Jeep just before it struck a tree. In the process, the Jeep's left rear tire ran over Mohr.[51]

Mohr filed a personal injury protection benefits claim against Brittingham whose PIP no fault coverage had limits of $15,000. On December 2, 2009, Mohr sent a letter to Progressive demanding "excess" personal injury protection benefits through his mother Maridebbie Mohr's Progressive policy because he was living with his mother at the time of the accident and believed himself to be an insured under her policy. Progressive rejected the claim. There is no evidence in the record to show that Mohr sought to recover from Brittingham's fault based bodily injury coverage or under his mother's underinsured motorist coverage.

## II. Analysis

Before proceeding to interpret 21 *Del. C.* § 2118, it is important to confront and appreciate intuitively the General Assembly's construct of our vehicle insurance laws. We must assume the obvious—the General Assembly is aware that its statutes require drivers to carry a variety of insurance coverages while operating vehicles on Delaware roadways, three of which are relevant to this case. The first is bodily injury insurance, which covers the

---

51. App. to Opening Br. A–8.

insured for wrongfully causing injury to a third party after the third party proves duty, breach, causation and damages. Second, underinsured motorist coverage may, under one's own policy, indemnify a driver or pedestrian for losses caused by a driver who harms the insured but does not have sufficient bodily injury insurance to completely indemnify the injured party.[52] Underinsured motorist coverage may apply only after a tortfeasor's liability coverage has been exhausted.[53] Finally, personal injury protection is no fault coverage indemnifying an injured person for certain enumerated losses arising from the use of a vehicle, regardless of fault. The Delaware personal injury protection scheme, as described by *Couch on Insurance,* is not a true form of no fault insurance "given that it does not affect the ability of the traffic accident victim to sue in tort, but merely provides benefits which are in addition to those afforded by the standard automobile coverage."[54]

The Majority's concern that Mohr will be left with insufficient coverage if he cannot access his mother's personal injury protection coverage misapprehends the General Assembly's no fault/fault scheme of mandated coverage. In reality, Mohr could access Brittingham's bodily injury coverage and, to the extent necessary, his own underinsured motorist coverage if he can prove that Brittingham tortiously injured him. The unique factual circumstances of this case and the difficulty Mohr might have proving Brittingham was at

fault clearly underlie Mohr's attempt to reformulate the General Assembly's thoughtful, interrelated construct of no fault PIP and fault based bodily injury coverage. Because Mohr may find it difficult to prove Brittingham was at fault, and by doing so access her bodily injury liability coverage, he will also find it difficult to access his mother's fault based underinsured motorist coverage.[55]

Personal injury protection represents Mohr's best chance to recover damages. Brittingham's carrier paid Mohr the maximum amount of $15,000 in personal injury protection benefits. Therefore, the issue in this case is whether the General Assembly mandated that Mohr's own insurance policy's personal injury protection cover him if a Delaware insured vehicle struck him while he was a pedestrian, regardless of fault. This question must be analyzed after appreciating that bodily injury coverage typically allows the pedestrian to recover damages when the driver of a vehicle wrongfully causes injury to the pedestrian.

### A. Subparagraph (d) only mandates coverage for insured pedestrians struck by non-Delaware insured motor vehicles.

In the analysis section of the opinion, the Majority jumps headfirst into its interpretation of 21 *Del. C.* § 2118(a)(2)(e) without first considering the threshold question of which subparagraph actually governs

---

52. For purposes of this dissent, the term underinsured motorist includes underinsured and uninsured motorists as the latter is a subset of the former.

53. Eric M. Holmes, *Appleman on Insurance* § 150.2, at 202 (2d ed. 2004) ("UIM coverage typically would be triggered only when the victim's underinsured coverage exceeded the tortfeasor's liability coverage. In this situation, the victim would then resort to his or her own underinsured coverage, minus the

liability settlement from the tortfeasor's carrier . . .").

54. Steven Plitt et al., *Couch on Insurance* § 125:5, at 125–16 (3d ed.2008).

55. When making a claim for underinsured motorist coverage, the insurance company stands in the shoes of the other driver and the person making the claim must prove fault.

coverage for injuries to insured pedestrians.[56] I find—after a comprehensive reading of the statute which takes into account the sequence of the provisions—that subparagraph (d) mandates the scope of coverage for pedestrian members of households while subparagraph (e) operates as a geographic limit on that scope.

Under heading (a) of 21 *Del. C.* § 2118, no Delaware vehicle owner shall operate a vehicle on Delaware roadways unless the owner has the legally required minimum insurance.[57] Heading (a) is divided into four paragraphs that describe the different areas of mandated insurance coverage: (1) indemnity from legal liability,[58] (2) compensation to injured persons,[59] (3) compensation for property damage,[60] and (4) compensation for damage to the insured vehicle.[61]

Paragraph (2) provides the relevant statutory text for mandated no fault personal injury protection coverage. Subparagraph (a) states, *inter alia,* that a person's insurance coverage must include compensation to injured persons for reasonable and necessary medical expenses incurred within 2 years from the date of the accident.[62] Subparagraph (b) establishes minimum limits of $15,000 for any one person and $30,000 for all persons injured in any one accident.[63] More importantly, subparagraphs (c) through (e) define the scope of the term "injured person."

First, subparagraph (c) provides that the mandated coverage "shall be applicable to" each person occupying the vehicle and any other person injured in an accident with the vehicle.[64] This subparagraph covers Mohr because a vehicle injured him in an accident, but the next subparagraph, which discusses pedestrian coverage in relation to members of the household, is more specific and therefore controls. Critically, the Majority fails to recognize that subparagraph (c) governs situations when

56. In the first sentence under the "Statutory Construction Issue" heading, the Majority writes: "The statutory construction issue presented requires us to decide whether: (1) subparagraph (e) of 21 *Del. C.* § 2118(a)(2) is plain on its face and susceptible only to the meaning Progressive ascribes to it ... or (2) whether subparagraph (e) is also reasonably susceptible to the opposite interpretation advocated by Mohr and adopted by the Superior Court." Op. at 496.

57. 21 *Del. C.* § 2118(a) ("No owner of a motor vehicle required to be registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle providing the following minimum insurance coverage:").

58. 21 *Del. C.* § 2118(a)(1).

59. 21 *Del. C.* § 2118(a)(2) ("Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident").

60. 21 *Del. C.* § 2118(a)(3).

61. 21 *Del. C.* § 2118(a)(4).

62. 21 *Del. C.* § 2118(a)(2)(a) ("Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for: 1. Medical, hospital, dental, surgical, medicine, x-ray, ambulance, prosthetic services, professional nursing and funeral services.").

63. 21 *Del. C.* § 2118(a)(2)(b) ("The minimum insurance coverage which will satisfy the requirements of subparagraph a. of this paragraph is a minimum limit for the total of all payments which must be made pursuant to that subparagraph of $15,000 for any 1 person and $30,000 for all persons injured in any 1 accident.").

64. 21 *Del. C.* § 2118(a)(2)(c) ("The coverage required by this paragraph shall be applicable to each person occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another motor vehicle.").

the insured hits a pedestrian while subparagraph (d) governs situations when the insured *is* the injured pedestrian. Mohr is seeking coverage in the latter case as a member of the insured household injured as a pedestrian. Admittedly, subparagraph (c) is carelessly drafted, but because the specific controls the general, subparagraph (d) provides the relevant statutory rule. Under subparagraph (d), the mandated coverage "shall also be applicable" [65] to named insureds and the members of their households:

> The coverage required by this paragraph shall also be applicable to the named insureds and members of their households for accidents which occur through being injured by an accident with any motor vehicle *other than a Delaware insured motor vehicle while a pedestrian* or while occupying any registered motor vehicle other than a Delaware registered insured motor vehicle, in any state of the United States, its territories or possessions or Canada.[66]

In this subparagraph, the General Assembly divided the set of situations where an insured or household member can be injured into two scenarios: when the person is in the vehicle ("while occupying any registered motor vehicle") and when the person is out of the vehicle ("while a pedestrian"). For insured pedestrians, coverage is required if the striking vehicle is a non-Delaware insured vehicle but not required if the striking vehicle is insured in Delaware. Similarly, for insured occupants, coverage is required if the occupied vehicle is a non-Delaware registered insured vehicle but not required if the occupied vehicle is a Delaware registered insured vehicle.

Unlike the previous two subparagraphs—which use the "shall be applicable" language—subparagraph (e) states that the coverage "shall apply to pedestrians only if" the accident occurs within Delaware.[67] The insertion of the word "only" signifies an intention by the General Assembly not to extend the required coverage to a new group of persons but to limit the coverage which must be provided to pedestrians. The General Assembly intended subparagraph (c) to control when an insured hits a pedestrian and subparagraph (d) to control when a third party hits the insured pedestrian. Subparagraph (e) is designed to limit this coverage to accidents inside Delaware, with one exception; pedestrians who are named insureds and members of the household may have coverage outside Delaware to the extent they must be covered under subparagraph (d). This morass of legal rules can be confusing, but if *any* one clear conclusion can be drawn, it is that subparagraph (e) is not the starting point of analysis for insured pedestrian coverage.

Nevertheless, the Majority begins and ends its analysis with subparagraph (e).[68] This error was certainly not induced by incorrect briefing: Progressive never made an argument based on subparagraph (e), which is cited only once in Progres-

---

65. It is important to note that the drafters used the same "shall be applicable to" language to signify another area of coverage that must be provided by insurance companies like Progressive.

66. 21 *Del. C.* § 2118(a)(2)(d) (emphasis added).

67. 21 *Del. C.* § 2118(a)(2)(e).

68. Op. at 495 ("That requires us to decide whether Delaware's no-fault automobile insurance statute—in particular, subparagraph (e) of 21 Del. C. § 2118(a)(2)—requires an insurer to provide PIP coverage under a Delaware policy for an insured who is injured, as a·pedestrian, in Delaware by a Delaware-insured car.").

sive's Opening Brief.[69] In fact, the second major heading under Merits of the Argument points to another statutory section: "Progressive's policy language is consistent with the Delaware PIP statute, specifically 21 *Del. C.* § 2118(a)(2)d."[70]

As described above, automobile insurance carriers writing insurance for vehicles in Delaware must provide coverage for named insureds or members of the household's pedestrians injured by non-Delaware insured vehicles. By itself, subparagraph (d) requires insurance companies to cover pedestrian accidents that occur in any state of the United States, its territories or possessions or Canada. Although subparagraph (e) creates a geographic limitation to coverage within the state, an exception referring to subparagraph (d) applies.[71] A comprehensive examination of the statute—one which considers the sequence of the subparagraphs—reveals that subparagraph (d) mandates coverage for pedestrians who are named insureds or members of the household.

Because the General Assembly specifically intends subparagraph (d) to provide the mandate for insured pedestrian PIP coverage, the next question is whether the Progressive insurance policy conforms to the statute. Maridebbie Mohr's policy for no fault personal injury protection provides that Progressive will "pay for reasonable and necessary covered expenses: (1) incurred as a result of bodily injury sustained by an *insured person* in an accident; and (2) incurred within two (2) years of the date of the accident."[72] This broad

coverage is limited by the definition of an insured person.

The Progressive policy defines an insured person as a named insured or member of the household who is injured "(i) as a pedestrian in an accident with any land motor vehicle other than a motor vehicle insured under Delaware law; or (ii) while occupying any registered motor vehicle other than a Delaware registered insured motor vehicle."[73] Progressive's insurance policy explicitly tracks the language of subparagraph (d). Therefore, Maridebbie Mohr's Progressive policy conforms exactly to the statute and cannot be "reformed" in any principled way.

**B. This Court cannot override the General Assembly's intentional, rational, and unambiguous decision to distinguish between Delaware and non-Delaware insured motor vehicles.**

The General Assembly intentionally, rationally, and unambiguously created a distinction between Delaware insured and non-Delaware insured vehicles. The canon of statutory construction *expressio unius est exclusio alterius* supports this interpretation of subparagraph (d).[74] "[W]here a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions."[75] Because the General Assembly has mandated coverage when a *non-Delaware* insured vehicle strikes a pedestrian, the only

---

69. App. to Opening Br. 13.

70. *Id.* at 10.

71. 21 *Del. C.* § 2118(a)(2)(e) (emphasis added).

72. App. to Opening Br. A–30 (emphasis added).

73. *Id.*

74. *Leatherbury v. Greenspun,* 939 A.2d 1284, 1291 (Del.2007).

75. Norman J. Singer, *Sutherland Statutes and Statutory Construction,* § 47:23 (7th ed.2011).

possible inference is that the General Assembly chose not to mandate coverage when a *Delaware* insured vehicle strikes a pedestrian.

The trial judge maintained that the distinction between Delaware insured and non-Delaware insured vehicles is "illogical." [76] I disagree. First, a rational basis for the distinction exists. The General Assembly mandated that Delaware insured vehicles must carry personal injury protection coverage from which an injured pedestrian can recover, but the General Assembly cannot mandate that non-Delaware insured vehicles carry the same insurance. To fill this gap, the General Assembly required coverage from the injured pedestrian's own insurance policy to cover accidents with non-Delaware vehicles.

In fact, a distinction between in state and out of state resident drivers is commonly created in this type of insurance. According to *Couch on Insurance*, "the different interest that the state has in its own citizens' compensation for injuries incurred on its own roads is generally ac- cepted as sufficient to justify treating nonresidents differently." [77] Similarly, Delaware has an interest in mandating no fault PIP coverage when a non-Delaware insured vehicle strikes a pedestrian because it ensures that the pedestrian has some form of PIP coverage regardless of whether the non-Delaware insured vehicle has similar insurance coverage. This mandate sensibly guarantees at least minimum *no fault* coverage comparable to that required for Delaware insured vehicles.

Second, the General Assembly, and not this Court, is privy to legislative fact finding and information not in the record, including answers to the following questions: (1) how much more would it cost consumers were Delaware to mandate widening the scope of coverage to Delaware insured vehicles; (2) how many insurance carriers would decide not to offer policies in Delaware if PIP stacking were mandated; (3) what actuarial statistics exist to determine whether carriers could afford to assume the risk of enlarging PIP coverage to gap

---

**76.** The Majority claims that the Superior Court adopted Mohr's interpretation of the statute. Op. at 496 ("the statute is also reasonably susceptible to the opposite interpretation advocated by Mohr and adopted by the Superior Court."). The trial judge cites the statute once in the discussion section: "Neither 21 *Del. C.* § 2118(a)(2)(d) nor 21 *Del. C.* § 2118(a)(e) contains a prohibition against stacking or differential offsets." *Mohr v. Progressive Northern Ins.*, 2010 WL 4061979, at *3 (Del.Super. Sept. 27, 2010). No reasonable person could read this sentence as holding that the statute mandates coverage of any sort which Mohr argued and the Majority accepts. Furthermore, the next paragraph of the opinion below discusses the "illogical" crapshoot of a plaintiff being struck by a Delaware insured versus non-Delaware insured vehicle, which is a concept articulated in subparagraph (d). The fact that the trial judge declined to discuss any affirmative interpretation of subparagraph (e) provides further support that subparagraph (d) contains the sole and exclusive mandate of PIP coverage for named insureds and members of the household who are injured pedestrians. Finally, despite engaging in a limited statutory analysis, the trial judge simply disagreed with the General Assembly's policy determination of differentiating between Delaware insured and non-Delaware insured vehicles. The trial judge's social policy view regarding the differentiation between Delaware and non-Delaware vehicles drove his conclusion that the General Assembly did not intend an illogical crapshoot rather than the Majority's more elegant statutory analysis.

**77.** Steven Plitt et al., *Couch on Insurance* § 125:12, at 125–131 (3d ed.2008); *see also* Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 169:94, at 169–173 (3d ed. 2008) ("Given that no-fault reigns in a minority of jurisdictions, these jurisdictions are understandably anxious to protect their residents against out-of-state vehicles.").

fill in a no fault regime for underinsured PIP vehicles; (4) will some auto insurance carriers provide the coverage even if it is not mandated and, if so, at what costs; and (5) what is the actuarial risk of paying no fault based claims relative to fault based claims and the cost to consumers of an imbalance in pricing the alternatives? When the General Assembly mandates coverage in *no fault* personal injury protection (a highly specific, limited range of damages), they know that there is a risk to legislating increased costs to insurance carriers and consumers. The Majority has proceeded to effectively mandate increased coverage for personal injury protection without any information in the record to assess the unintended consequences.

This brings me to a related but distinct third point. *Couch on Insurance* describes no fault coverage as contractual in nature.[78] The parties to this insurance contract knew or had the ability to know the exact scope of insurance at the time of purchase. "The right to reject no-fault is also generally permitted with respect to all motorists under the type of plan known as an 'Add-on' or 'Delaware' plan."[79] In this case, Maridebbie Mohr rejected no fault personal injury protection coverage for members of her household struck by Delaware vehicles when she agreed to purchase a Progressive policy with language conforming to the General Assembly's statutory regime.

In the Answering Brief, Mohr even concedes that the language of the policy unambiguously prevents him from recovering benefits.[80] Progressive, in making its business decision to provide the coverage identical to the statutory mandate at a certain price, could not have anticipated that it would have to cover damages resulting from Delaware minimum PIP insured vehicles striking insured pedestrians. Unless Maridebbie Mohr was supremely prescient, she could not have predicted that a Superior Court judge would require Progressive to provide the insurance, presumably under the guise of "reforming the policy." Neither of the parties to the contract could have expected the Majority's preferred outcome when the parties exchanged consideration and signed the contract.[81]

By requiring Mohr's personal injury protection insurance to stack on top of Brittingham's insurance, the Majority has altered the General Assembly's no fault based personal injury protection and fault based underinsured motorist coverage. The Majority's holding would import a new form of underinsured motorist coverage for personal injury protection that the General Assembly never intended and the contracting parties never expected. Even the most imaginative General Assembly could not have contemplated this result when it drafted the unambiguous statutory language. Stated in another way, the General Assembly is aware of how it has structured fault based bodily injury coverage and underinsured motorist coverage. If the General Assembly intended the Majority's result, it would have explicitly made it clear by removing the language

78. *Id.* at § 125:3, 125–11.

79. *Id.*

80. Answering Br. at 8.

81. The Majority makes much of the fact that Maridebbie Mohr paid a premium for her higher than the minimum PIP coverage. We can intuit that she did. However, no one can intuit that she did or would have paid a premium high enough to purchase the expanded coverage mandated by the Majority today. The Majority's expansion of coverage includes a risk never contemplated by Progressive's policy or priced accordingly. Maridebbie's insured "pedestrian" receives a windfall as a result.

limiting the scope of the mandated PIP coverage to non-Delaware insured vehicles. Therefore, the Majority errs by eviscerating the General Assembly's carefully crafted decision to distinguish between Delaware and non-Delaware insured vehicles and to recognize the distinction between no fault and fault based coverage.

### C. Broad public policy statements in a statute's preamble do not govern the specific and explicit text of an unambiguous statutory provision.

Public policy considerations only empower courts to construct gap fillers when the statute is ambiguous, and unambiguous statutory text trumps the statute's purpose or broad public policy preamble. Subparagraph (d) does not have an ambiguous gap; it has a mandatory designation and an intentional omission. Because the statute is rational and unambiguous, the public policy goals cited by the Majority do not inform a credible interpretation of the statute. Moving from the statute to the policy, Progressive patterned its policy language on the text of the statute—text that specifically did not require it to extend coverage to Delaware insured vehicles that injure insured pedestrians. Because the Progressive policy conforms to subparagraph (d), there is no credible argument that the insurance policy violates the purpose of the statute.

Assuming, *arguendo,* that an ambiguity exists in the statute, I contend that the twin public policy concerns of full compensation and encouraging more than minimum insurance do not control this case.

The Majority cites *Bass v. Horizon Assurance Co.,*[82] *State Farm Mut. Auto. Ins. Co. v. Wagamon,*[83] and *Nationwide General Ins. Co. v. Seeman*[84] for the proposition that the fundamental purpose of the statute is to fully compensate victims of car accidents. Those cases, however, are all distinguishable for the same reasons; they involved insurance policies that created exclusions which were clearly in conflict with the statute.

In *Bass,* the insurance carrier denied the claim because the policy had an exclusion which completely denied coverage when the insured was convicted of driving under the influence of alcohol. We held that the insurance policy exclusion "violated the language and legislative intent of the Delaware No–Fault statute."[85] *Bass* reasoned that the "DUI exclusion in Horizon's insurance policy conflicts with the basic statutory requirement of providing minimum legal coverage for claims by victims of an automobile accident."[86] In this case, however, the statute explicitly eschews mandating minimum PIP coverage for insured pedestrians injured by Delaware insured vehicles. Thus, Progressive's policy and its decision to deny coverage to an insured injured by a Delaware insured vehicle reflects specific statutory language narrowing the scope of coverage mandated. The statutory language states the required ambit of coverage and the Progressive policy conforms to that language—neither "excludes" coverage.

I take a moment to discuss the crucial difference between scope of coverage and an exclusion. The Majority opinion quoted *Harris v. Prudential Property & Cas. Ins.*

**82.** *Bass v. Horizon Assurance Co.,* 562 A.2d 1194 (Del.1989).

**83.** *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557 (Del.1988).

**84.** *Nationwide General Ins. Co. v. Seeman,* 702 A.2d 915 (Del.1997).

**85.** *Bass,* 562 A.2d at 1196.

**86.** *Id.* at 1197.

*Co.* for the proposition that "[i]n the absence of express legislative authority, no policy exclusions affecting statutory minimum coverage will be recognized." [87] By relying on *Harris,* the Majority analyzes a policy exclusion as if that term of art applies to scope of coverage. According to *Couch on Insurance,* a policy exclusion occurs "[w]hen a type of insurance intended to cover a particular risk excludes a portion of that risk." [88] For example, an insurance policy for fire damage to a house could have a policy exclusion for arson committed by the named insured. In this case, however, the General Assembly never required Progressive to provide coverage to insured pedestrians struck by Delaware insured vehicles in the first place. The mandate expressly and clearly limited the scope of coverage. Excluding a particular person otherwise covered, except under circumstances that would divest him of coverage, is fundamentally different from declining to write coverage the statute does not mandate. Therefore, the *Harris* rule barring policy exclusions, except when expressly permitted by legislative authority, has no bearing here.

In *Wagamon,* Lydia Wagamon and her mother were injured in a car accident, and the mother sued her daughter for her personal injuries. State Farm denied coverage because the policy contained a household exclusion that precluded any claim for bodily injury brought by a member of an insured's family residing with the insured. Again, we held that "[t]he State Farm policy conflicts with the statutory scheme of sections 2118 and 2902." [89] Because I

believe that the Progressive policy in this case is consistent with subparagraph (d), there can be no plausible argument that the policy violates the purpose of the statute. Furthermore, the distinction between bodily injury and personal injury protection is meaningful. Bodily injury insurance is based on fault; if this type of insurance is limited or excluded, then the third party has lost the primary source of recovery from the party at fault. Personal injury protection, however, is a form of no fault insurance which is not the primary form of recovery for a plaintiff. Therefore, choosing not to mandate no fault personal injury protection in this limited situation does not foreclose the primary source of compensation for the pedestrian—fault based bodily injury and underinsured motorist coverage.

In *Seeman,* a father and his son were injured in a car accident. The son sued his father for damages. Nationwide denied the claim because the policy had a modified household exclusion which limited liability coverage for household members to the statutory minimum. We held that the insurance policy "violated the statutory purpose of encouraging the Delaware driving public to purchase more than the statutory minimum amount of automobile insurance coverage." [90] As with the two previous cases, the type of insurance at issue was bodily injury. When fault based insurance is the only type of insurance available, there is serious concern that taking away that coverage leaves the plaintiff with no alternative, but that concern is not

---

**87.** Op. at 500 (citing *Harris v. Prudential Property & Cas. Ins. Co.,* 632 A.2d 1380, 1382–83 (Del.1993)).

**88.** Lee R. Russ et al., *Couch on Insurance* § 1:26 (3d ed.2011) ("The various types of insurance are related in practical terms. When a type of insurance intended to cover a particular risk excludes a portion of that risk

under a specific policy exclusion, for example, an additional rider or another policy might have to be purchased to cover that narrow, additional risk.").

**89.** *Wagamon,* 541 A.2d at 560.

**90.** *Seeman,* 702 A.2d at 918.

present in this case because bodily injury and underinsured motorist coverages are fault based additions to no fault personal injury protection coverage. Furthermore, Progressive's insurance policy can be distinguished for the same reasons cited above—notably, that it does not contain an exclusion and it conforms to the statute. Thus, in my view, it is not necessary to explore the nether regions of public policy.

To the extent *Wagamon, Bass,* and *Seeman* can be read to find that Section 2118 is illogical, the General Assembly is presumed to be aware of common law precedent's effect on its statutes. *Makin v. Mack* held that "it is an accepted principle of statutory construction that a legislature is presumed to know the common law before a statute is enacted."[91] *Wagamon, Bass,* and *Seeman* were decided in 1988, 1989, and 1997. Section 2118 has been amended 18 times between 1990 and 2010.[92] If the General Assembly believed the distinction between Delaware and non-Delaware insured motor vehicles to be illogical, it would have eliminated "other than a Delaware insured motor vehicle" in subparagraph (d), but it did not. Therefore, one can infer that the General Assembly finds that the distinction between Delaware and non-Delaware insured motor vehicles and the distinction between fault and no fault based coverage to be logical and consistent with the public policy and purpose of the statute.

## III. Conclusion

The General Assembly has spun an intricate web of insurance coverage that considers actuarial costs, availability of insurance, and consumer access to coverage at affordable rates. The interrelationship between fault and no fault coverage creates a situation where Mohr has recourse beyond Brittingham's PIP pedestrian coverage; even though the statute prevents Mohr from stacking no fault personal injury protection benefits, he nevertheless can exercise his right to sue the tortfeasor who wronged him and access either her bodily injury coverage, or, if that coverage is inadequate, his mother's underinsurance coverage. This Court should not frustrate the General Assembly's carefully constructed interrelationship between mandated no fault and fault based coverage by reforming the policy or expanding the statutory mandates in order to help Mohr avoid this difficulty.

Although the Majority opinion's unflagging pursuit of full compensation to all persons injured in automobile accidents may be laudable—albeit not based on any facts relating to availability of or cost of insurance in the state—I do not accept the Majority's underlying premise that the statute can be read to imply that the General Assembly intended automobile insurance policies to provide no fault personal injury protection coverage to insured pedestrians under their own policies where Delaware insured vehicles injure those insured pedestrians. Because the Majority chooses to recraft what I believe to be an unambiguous statutory provision with a re-

**91.** *Makin v. Mack,* 336 A.2d 230 (Del.Ch. 1975).

**92.** 67 Del. Laws ch. 177, §§ 1, 2 (1990); 68 Del. Laws ch. 331, §§ 1–4 (1992); 68 Del. Laws ch. 336, § 1 (1992); 69 Del. Laws ch. 116, § 3 (1993); 69 Del. Laws ch. 155, §§ 1, 2 (1993); 69 Del. Laws ch. 197, § 1 (1994); 69 Del. Laws ch. 413, § 1 (1994); 70 Del. Laws ch. 186, § 1 (1995); 70 Del. Laws ch. 247, §§ 1 to 3 (1995); 72 Del. Laws ch. 20, § 1 (1999); 72 Del. Laws ch. 58, §§ 1, 2 (1999); 72 Del. Laws ch. 219, § 1 (1999); 72 Del. Laws ch. 380, §§ 1, 2 (2000); 74 Del. Laws ch. 110, § 139 (2003); 74 Del. Laws ch. 400, § 1 (2004); 75 Del. Laws ch. 59, § 1 (2005); 76 Del. Laws ch. 128, § 1 (2007); 77 Del. Laws ch. 419, § 1 (2010).

sult that extends insurance coverage in a way the General Assembly, Progressive, and Mohr never intended or expected, I respectfully dissent.