IN THE SUPREME COURT OF THE STATE OF DELAWARE

JOSEPH WILSON,                          §
                                        §    No. 114, 2022
    Appellant Below,                §
    Appellant,                      §    Court Below:  Superior Court
                                        §    of the State of Delaware
    v.                              §
                                        §    C.A. No. K21A-06-002
GINGERICH CONCRETE &                    §
MASONRY,                                §
                                        §
    Appellee Below,                 §
    Appellee.                       §


Submitted:  September 21, 2022
Decided:  October 3, 2022


Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

On appeal from the Superior Court.  **AFFIRMED**.

Walt F. Schmittinger, Esquire, Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Appellant.

H. Garrett Baker, Esquire, Elzufon, Austin & Mondell, P.A., Wilmington, Delaware for Appellee.


**VALIHURA**, Justice:

## I.     BRIEF OVERVIEW

This is an appeal of a March 9, 2022 decision by the Superior Court affirming the May 6, 2021 order (the "Order") of the Industrial Accident Board (the "IAB" or "Board") denying Appellant Joseph Wilson's ("Wilson") petition seeking payment for a cervical spine surgery.  The parties agree that the treatment Wilson received was reasonable and necessary.  The issue we confront is whether the treatment is compensable given that the treating physician's certification under the Delaware Workers' Compensation Act (the "Act") had lapsed by the time of treatment.  If the treatment is not compensable, as the IAB and Superior Court held, then Wilson asks us to anticipatorily resolve the question of whether he can be liable for the bill even though no one has asserted such a claim.

Wilson was injured in a work-related accident on August 1, 2002 while working for Appellee Gingerich Concrete and Masonry ("Employer").  Sometime after the accident, Wilson started treatment with Dr. Bikash Bose ("Dr. Bose"), a certified Delaware workers' compensation healthcare provider.  Wilson's injury necessitated two related cervical surgeries.  The first surgery was performed while Dr. Bose was certified under the Delaware workers' compensation system (the "Delaware Certification") according to the requirements set forth in the Act.  Employer's carrier paid the bills related to Wilson's first surgery.

But Wilson's first surgery proved unsuccessful, and Dr. Bose recommended a second surgery.  During the time between Wilson's first surgery and his second surgery, Dr. Bose's Delaware Certification lapsed, and he did not seek re-certification for nineteen months.

2

Wilson petitioned the IAB, seeking payment for his second surgery. The IAB scheduled a hearing.[1] In order to obtain expert testimony for the hearing, Wilson deposed Dr. Bose. At Dr. Bose's deposition, Wilson first learned that Dr. Bose's Delaware Certification had lapsed prior to Wilson's second surgery due to an administrative error, but that Dr. Bose corrected the issue shortly after Wilson's second surgery.

Employer filed a motion *in limine* asserting that the lapse in Dr. Bose's Delaware Certification negated Wilson's right to recover his surgical bills through the workers' compensation health care payment system. The parties stipulated that Wilson's surgery was reasonable, necessary, and related to Wilson's workplace injury.

Relying on 19 *Del. C.* § 2322D, as well as this Court's opinion in *Wyatt v. Rescare Home Care*,[2] the hearing officer held that Wilson's treatment was noncompensable solely because Dr. Bose lacked certification at the time of Wilson's second surgery. The hearing officer considered Dr. Bose to be an "uncertified provider" who was required by statute to obtain pre-authorization for treatment.

Wilson appealed the IAB's decision to the Superior Court, arguing that the IAB erred when it equated a *lapse* in Delaware Certification with a *lack of* Delaware Certification. In affirming the IAB's Order, the Superior Court recognized that the IAB failed to explain its decision, which conflicted with two prior IAB decisions, namely,

---

[1] In the meantime, Dr. Bose performed the second surgery.

[2] 81 A.3d 1253, 1263 (Del. 2013) [hereinafter *Wyatt*, 81 A.3d at _].

3

*Williams v. State*,[3] and *Zayes v. State*.[4]  Nevertheless, the Superior Court found that this Court's precedent in *Wyatt* controlled, and that the IAB's decision was correct as a matter of law.  Accordingly, the Superior Court upheld the Board's denial of Wilson's petition.

Wilson raises two issues on appeal.  First, he asserts that the Act should be construed liberally and requires a good-faith exception to the certification requirements when there is a lapse in certification due to an administrative oversight.

Second, Wilson asserts that upholding the Board's decision creates an injustice where Wilson might be responsible, through no fault of his own, for medical bills associated with reasonable and necessary treatment.  Although no such action has been initiated or threatened, he argues that the Act's plain language expressly permits Dr. Bose to commence collection efforts against him after there is a final decision holding that his medical bills are noncompensable.

We conclude that Dr. Bose's lapse rendered him uncertified, and, thus, the disputed bills are not compensable under 19 *Del. C.* § 2322D.  We do not reach Wilson's second issue as it is not ripe.[5]

---

[3] No. 1282260 (Del. I.A.B. Feb. 6, 2012) [hereinafter *Williams*, No. 1282260, at _].

[4] No. 1365817 & 1411306 (Del. I.A.B. Sept. 10, 2015) [hereinafter *Zayes*, No. 1365817, at _].  We note that the IAB caption incorrectly spells the claimant's name--Ms. Zayas--as "Zayes," even though it spells her name correctly in the decision.  *See Zayes*, No. 1365817, at 2; *see also Zayas v. State*, 272 A.3d 776, 778 (Del. 2022) (identifying claimant as "Christina Zayas").

Because the parties in their briefing refer to this IAB decision as "*Zayes*," we do the same here for ease of reference.  We intend no disrespect to Ms. Zayas.

[5] There may be various statutory, contractual, or other impediments to holding Wilson responsible for the costs due to a lapse that was not his fault.  Employer acknowledged the inequities in such an outcome.  *See* Ans. Br. at 16; *id*. (stating that "it would be a very heady thing for any physician

4

For the reasons set forth below, we AFFIRM the decision of the Superior Court.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Wilson's Injury and Dr. Bose's Treatment

Wilson was injured in a work-related accident while working for Employer on August 1, 2002.[6] Wilson sustained work-related injuries to his neck and lower back.

In 2014, Wilson began treating with Dr. Bose, a board-certified neurosurgeon,[7] for complaints relating to his 2002 work-related injury. Treatment rendered by Dr. Bose at this time was covered by Employer's carrier. Wilson also received pain management treatment from several other physicians in connection with his work-related injury, but Wilson returned to Dr. Bose in 2019 for a reevaluation.

On February 22, 2019, Dr. Bose performed Wilson's physical examination, during which Wilson expressed complaints of a "burning sensation in his neck which radiated down both sides of his neck and into his shoulders and into his arms."[8] "He also complained of a feeling of weakness in [his] right arm[.]"[9] Dr. Bose found that the pain Wilson was experiencing was due to a pinched nerve in his neck, likely caused by a buildup of calcium around the nerve. Dr. Bose ordered Wilson to undergo imaging studies.

---

to assert that the patient becomes personally responsible for medical care which is not compensable by consequence of the physician's own legal failings."). *See infra* n.70.

[6] B-39 *Wilson v. Gingerich Concrete & Masonry*, No. 1215102, at 2 (Del. I.A.B. May 6, 2021) [hereinafter IAB Decision]; A-003 *Wilson v. Gingerich Concrete & Masonry*, No. 1215102, at 3:12 (Del. I.A.B. Apr. 23, 2021) (TRANSCRIPT) [hereinafter IAB Tr.].

[7] B-4 (Dr. Bose Dep. at 4:19-6:3). Dr. Bose has been practicing for 35 years. *Id.* The parties do not dispute Dr. Bose's qualifications. *See* B-5 (Dr. Bose Dep. at 5:10-13).

[8] B-6-8 (Dr. Bose Dep. at 6:24-7:3, 8:14).

[9] B-7 (Dr. Bose Dep. at 7:3-4).

5

On May 29, 2019, after reviewing Wilson's results, Dr. Bose discovered that Wilson had "multilevel disc disease" in his neck and lower back. Dr. Bose recommended different options for treatment, including a surgical option consisting of a "C3-4 and C5-6 discectomy."[10] After another visit to further discuss his options, Wilson decided to have the surgery.

Wilson's cervical surgery took place on July 2, 2019 (the "First Cervical Surgery"). According to Dr. Bose, Wilson's First Cervical Surgery "went as planned[,]"[11] and Employer's carrier paid Wilson's medical bills associated with the surgery.

Around January 2020, about six months after the First Cervical Surgery, Dr. Bose reviewed Wilson's updated cervical spine X-rays. The X-rays revealed that Wilson's fusion had not yet solidified. According to Dr. Bose, an average person should "fuse" by six months post-surgery, but a small percentage of people are "slow healers" and may take up to a year.[12] Dr. Bose continued to monitor Wilson's recovery.

On July 17, 2020, Wilson again went to Dr. Bose with updated imaging studies. Dr. Bose found postoperative changes, meaning that Wilson still had not fused even though almost a year passed since the First Cervical Surgery. This essentially rendered Wilson's First Cervical Surgery unsuccessful. Dr. Bose proposed additional treatment, including both surgical and nonsurgical options.

On August 7, 2020, Wilson returned to Dr. Bose to further discuss the surgical

---

[10] B-10-11 (Dr. Bose Dep. at 10:16-18, 11:5-19).

[11] B-11-12 (Dr. Bose Dep. at 11:20-12:3).

[12] B-13 (Dr. Bose Dep. at 13:19-23).

6

option. Wilson inquired into the specific procedure and the associated risks. Before committing to another surgery, Wilson wanted to obtain a second opinion.

On October 20, 2020, Wilson sought a second opinion from Dr. Eppley.[13] Dr. Eppley agreed with Dr. Bose's assessment and concluded that there was a "clear nonunion at C3-4 and C5-6 with slight loosening of the instrumentation."[14]

Wilson returned to Dr. Bose in order to have the new surgery (the "Second Cervical Surgery"), which occurred on February 22, 2021. Similar to the first surgery, Dr. Bose stated that the Second Cervical Surgery "went as planned."[15]

*B. Wilson's Petition for Compensation and the IAB Decision*

On October 1, 2020, Wilson filed a Petition to Determine Additional Compensation Due seeking compensability of medical treatment with Dr. Bose, which would include a prospective second cervical surgery (the "Second Cervical Surgery"). A hearing on the matter was held on April 23, 2021.

On April 7, 2021,[16] in preparation for the IAB hearing, Wilson took Dr. Bose's deposition. Dr. Bose testified that both the First Cervical Surgery and the Second Cervical Surgery were "reasonable, necessary, and related to [Wilson's work-related] injury."[17]

---

[13] B-19 (Dr. Bose Dep. at 19:9-13). Dr. Bose's deposition does not identify Dr. Eppley's full name.

[14] B-19-20 (Dr. Bose Dep. at 19:17-20:2).

[15] B-23 (Dr. Bose Dep. at 23:15-19).

[16] The transcript of Dr. Bose's deposition is incorrectly dated April 7, 2020. *See* B-1 (Dr. Bose Dep.). Dr. Bose's deposition, however, occurred on April 7, 2021. *See* B-40 (IAB Decision at 3).

[17] B-25-26 (Dr. Bose Dep. at 25:20-26:2).

On cross-examination, Employer asked whether Dr. Bose was recertified under the Delaware Workers' Compensation Practice Guidelines. Dr. Bose testified that he was. Employer stated that the Delaware Workers' Compensation website crossed out Dr. Bose's name on its certification list.[18] Dr. Bose explained that "it was," but that he had "taken care of the paperwork."[19] According to Dr. Bose, "[i]t was like the CME was not filed so we sent them the paperwork last week so they were going to take it off. We noticed that."[20] Dr. Bose further testified that

> I have been certified all along, but with COVID there was some problem with communication from their office email and all that and, you know, it fell through the cracks so there was some -- we noticed that other providers have the same issues and so when it came to our attention, then we filled out the paperwork and submitted it to them. And my office talked to them last week or the week before so they said that shouldn't be a problem.[21]

Employer questioned exactly when Dr. Bose was recertified, to which he responded that the paperwork was sent in around the end of March 2021. No further questions were asked regarding why Dr. Bose lacked Delaware Certification from August 31, 2019 until March 29, 2021. However, neither Wilson, nor Wilson's counsel, knew of Dr. Bose's lapse in Delaware Certification until Dr. Bose's April 7, 2021 deposition.

The hearing occurred on April 23, 2021 before an IAB hearing officer. During the hearing, Employer stated that it did not challenge the treatment based on substantive

---

[18] B-28 (Dr. Bose Dep. at 28:4-5). Counsel for Employer stated: "I have pulled up a copy of their website and your name is crossed out." *Id.*

[19] B-28 (Dr. Bose Dep. at 28:6-7).

[20] B-28 (Dr. Bose Dep. at 28:7-9).

[21] B-28-29 (Dr. Bose Dep. at 28:20-29:4).

8

reasons, but rather on "failure to comply reasons"--namely, that Dr. Bose was not certified during Wilson's Second Cervical Surgery because he failed to complete his Delaware Certification.[22] Thus, the only question before the hearing officer was whether Dr. Bose was qualified for compensation under the Act with regard to Wilson's Second Cervical Surgery.

Employer argued that, in order for treatment to be compensable under the Act, the treatment had to be provided either by a Delaware certified provider, or the provider had to seek preauthorization. Relying on this Court's opinion in *Wyatt*, Employer pointed to only one exception to this rule: first consultations.[23] Dr. Bose was initially certified in 2008 and recertified four times. Dr. Bose, however, was not certified from August 31, 2019 to March 29, 2021, a period of about 19-months. According to Employer, because Dr. Bose was not certified at the time of the Second Cervical Surgery, did not seek preauthorization, and the Second Cervical Surgery did not fall within the exception, the Second Cervical Surgery was not compensable under the statute.

Wilson agreed that the only issue was the effect that Dr. Bose's certification status had on compensability. Wilson further agreed that Dr. Bose was initially certified on April 30, 2008, recertified four times, and had a lapse in certification from August 31, 2019 to March 29, 2021. Wilson, however, specifically characterized Dr. Bose's 19-month gap in

---

[22] A-004 (IAB Tr. at 4:1-2).

[23] *See* A-005 (IAB Tr. at 5:14-18). During the hearing, Employer correctly identified that *Wyatt* outlined two exceptions to the rule: first consultation and care provided in the emergency unit of a hospital or a pre-hospital setting. *Id.* The emergency exception, however, no longer applies. *See* 19 *Del. C.* § 2322D(b) ("The provisions of this subsection are limited to the occasion of the employee's first contact with any healthcare provider for treatment of the injury[.]").

9

Delaware Certification as a "lapse"[24] in certification as opposed to a lack of certification. Wilson argued that the Act lists requirements for initial certification but does not provide "penalties" for a failure to recertify at given intervals.[25] Therefore, Wilson argued that Dr. Bose "is, and has been, a certified provider and a participant in the worker[s'] compensation system[,]"[26] such that the Second Cervical Surgery is compensable.

On May 6, 2021, the hearing officer found that Wilson's medical expenses were "not compensable due to Dr. Bose's lack of certification and/or failure to obtain pre-authorization for those expenses."[27] The hearing officer agreed with Employer that Dr. Bose's lapse in certification meant that Dr. Bose was effectively uncertified during the 19-month period. Relying on the Act and this Court's precedent in *Wyatt*, the hearing officer found that uncertified providers who fail to obtain pre-authorization for treatment are not entitled to compensation. Although Dr. Bose testified that his lapse in Delaware Certification starting in August of 2019 was "due to an administrative error and/or due to the Covid pandemic," the hearing officer noted that "the Covid pandemic did not begin until 2020."[28] Nevertheless, because Dr. Bose did not seek preauthorization for the Second Cervical Surgery, and because the Second Cervical Surgery did not fall within the exception, the hearing officer concluded that it was not compensable.

---

[24] A-011 (IAB Tr. at 11:9).

[25] A-015 (IAB Tr. at 15:5-9).

[26] A-008 (IAB Tr. at 8:23-24).

[27] B-44 (IAB Decision at 7).

[28] B-41 (IAB Decision at 4).

10

*C. Wilson's Appeal to the Superior Court*

Wilson appealed the Order to the Superior Court. He argued that the Board erred when it equated Dr. Bose's lapse in certification to a lack of certification. According to Wilson, neither Section 2322D nor the Workers' Compensation Regulations permitted the IAB to find that a medical provider's certification expired every two years.[29] Further, Wilson argued that the Board failed to explain its deviation from two prior IAB decisions that had described a lapse in Delaware Certification as *de minimis*. According to Wilson, once Dr. Bose received his Delaware Certification, he remained certified, notwithstanding the lapse. In addition, Wilson challenged the Board's decision by arguing that the Department of Labor (the "DOL") failed to provide Dr. Bose with notice and a hearing, as required by Delaware's Administrative Procedures Act.

In response, Employer argued that the Board correctly applied Section 2322D. Further, Employer argued that Wilson lacked standing to challenge notice requirements on behalf of Dr. Bose.

The Superior Court affirmed the Board's decision. As a threshold matter, the court addressed Employer's argument that Wilson lacked standing to challenge the DOL's alleged failure to provide Dr. Bose notice of his lapse in certification. The court declined to decide this matter for various reasons, including Wilson's failure to raise the issue before the Board.

Turning to the sole substantive issue in Wilson's appeal, the court addressed

---

[29] *Wilson v. Gingerich Concrete & Masonry*, 2022 WL 701632, at *2 (Del. Super. Mar. 9, 2022) [hereinafter *Wilson*, 2022 WL 701632, at _].

11

whether the Board correctly applied Section 2322D, as well as this Court's decision in *Wyatt*. Relying on its common, ordinary meaning, the court described a "lapse" as something that occurs when "a right, privilege, or agreement *becomes invalid* because it is not used, claimed or renewed."[30] "In other words, [a lapse occurs when] the right or privilege expired."[31] Effectively, the court concluded that a lapse in certification meant that Dr. Bose was uncertified during the 19-month period.

Because Dr. Bose was uncertified during that 19-month period, the Superior Court turned to *Wyatt* and Section 2322D to determine whether an uncertified provider's treatment would be compensable. The court concluded that both *Wyatt* and Section 2322D required a treating physician to be certified, obtain preauthorization, or fall into the exclusive list of exceptions provided in Section 2322D. Because Section 2322D does not permit an additional "good faith" exception, the court declined to judicially craft an exception for an administrative error.

Finally, the Superior Court addressed Wilson's contention that the Board's failure to follow its own precedent required reversal. The court considered whether a remand would be appropriate to obtain an explanation from the Board as to why its approach changed. But because the issue was one of statutory construction subject to *de novo* review, the court determined that remanding would not be efficient given the court's view that the Board's decision was correct as a matter of law.

---

[30] *Id.* at *6 (emphasis in original).

[31] *Id.*

12

## III. CONTENTIONS ON APPEAL

This appeal followed. The question Wilson presents is whether a lapse in Delaware Certification due to an administrative oversight equates to a lack of Delaware Certification such that any treatment rendered during that 19-month period would be noncompensable under the statute. Wilson contends that if a *lapse* in certification equates to a *lack* of certification at the time of his Second Cervical Surgery, then he becomes responsible for the medical bills associated with the procedure.

Employer disagrees and argues that Wilson misreads the statute. Further, Employer states that there is nothing in the record suggesting Dr. Bose has either attempted or contemplates holding Wilson personally liable for the medical expenses at issue. Accordingly, Employer argues that the Superior Court correctly affirmed the Board's decision by applying Section 2322D, as well as our precedent in *Wyatt*.

## IV. STANDARD OF REVIEW

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[32] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[33]

---

[32] *Zayas v. State*, 273 A.3d 776, 784-85 (Del. 2022) (citing *Roos Foods v. Guardado,* 152 A.3d 114, 118 (Del. 2016)); *Sheppard v. Allen Family Foods*, 279 A.3d 816, 826 (Del. 2022).

[33] *Id.* at 785 (citing *Roos Foods*, 152 A.3d at 118).

If the Board decided legal issues, this Court reviews them *de novo*.[34] "Absent errors of law, which are reviewed *de novo*, we review a Board's decision for abuse of discretion."[35] If there is no error of law and substantial evidence supports the Board's findings, "the Board's decision must be affirmed."[36]

## V. ANALYSIS

First, we consider the effect of a lapse in certification under Section 2322D of the Workers' Compensation Act.

### A. Section 2322D Requires Providers to be Certified

"The 'most important consideration for a court in interpretating a statute is the words the General Assembly used in writing it.'"[37] "Undefined words are given their ordinary, common meaning, and words should not be construed as surplus if a reasonable construction will give them meaning."[38] "When the statute is 'clear on its face and is fairly susceptible to only one reading, the unambiguous text will be construed accordingly,' unless the result is an absurdity 'that cannot be attributed to the legislature.'"[39] "In

---

[34] *Id.* (citing *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[35] *Greenville Country Club v. Greenville Country Club*, 150 A.3d 1194, 1197 (Del. 2016) (citing *Person-Gaines v. Pepco Hldgs., Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[36] *Zayas*, 273 A.3d at 785 (citing *Stevens v. State*, 802 A.2d 939, 944 (Del. Super. 2002)); *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[37] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 113 (Del. 2020) (quoting *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950 (Del. Ch. 2013)). *See also Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 354 (Del. 2022) (citing *Salzberg*, 227 A.3d at 113).

[38] *Wyatt*, 81 A.3d at 1260 (citing *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 495 (Del. 2012)).

[39] *Id.* at 1260-61 (quoting *Mohr*, 47 A.3d at 496).

14

interpreting the statute, this Court will read all sections of the statute, 'in light of all the others to produce a harmonious whole.'"[40]

Section 2322D(a) provides in full:

(a)(1) Certification shall be required for a health-care provider to provide treatment to an employee, pursuant to this chapter, without the requirement that the health-care provider first preauthorize each health-care procedure, office visit or health-care service to be provided to the employee with the employer or insurance carrier. Any health-care provider who is not licensed by the State of Delaware to provide medical services may elect to become certified under this section, and thereby obtain the same rights and obligations under this chapter as a certified health-care provider who is licensed by the State of Delaware to provide health-care services. The provisions of this subsection shall apply to all treatments to employees provided after the effective date of the rule provided by subsection(c) of this section, regardless of the date of injury. A health-care provider shall be certified only upon meeting the following minimum certification requirements:

    a.    Have a current license to practice, as applicable;
    b.    Meet other general certification requirements for the specific provider type;
    c.    Possess a current and valid Drug Enforcement Agency ("DEA") registration, unless not required by the provider's discipline and scope of practice;
    d.    Have no previous involuntary termination from participation in Medicare, Medicaid or the Delaware workers' compensation system, which shall be determined to be inconsistent with certification under regulations adopted pursuant to subsection (c) of this section;[41]
    e.    Have no felony convictions in any jurisdiction, under a federal-controlled substance act or for an act involving dishonesty, fraud or misrepresentation, which shall be determined to be

---

[40] *Id.* at 1261 (quoting *Mohr*, 47 A.3d at 496).

[41] Subsection (c) provides that "[s]ubject to the foregoing provisions, complete rules and regulations relating to provider certification shall be approved and proposed by the Workers' Compensation Oversight Panel. Regulations arising from the Panel's work shall be adopted by regulation of the Department of Labor pursuant to Chapter 101 of Title 29." 19 *Del. C.* § 2322D(c).

15

inconsistent with certification under regulations adopted pursuant to subsection (c) of this section; and

f. Provide proof of adequate, current professional malpractice and liability insurance.

(2) The certification rules shall require that any healthcare provider to be certified agree to the following terms and conditions:

a. Compliance with Delaware workers' compensation laws and rules;

b. Maintenance of acceptable malpractice coverage;

c. Completion of State-approved continuing education courses in workers' compensation care every 2 years;

d. Practice in a best-practices environment, complying with practice guidance and Utilization Review Accreditation Council ("URAC") utilization review determinations;

e. Agreement to bill only for services and items performed or provided, and medically necessary, cost-effective and related to the claim or allowed condition;

f. Agreement to inform an employee of that employee's liability for payment of noncovered services prior to delivery;

g. Acceptance of reimbursement and not unbundled charges into separate procedure codes when a single procedure code is more appropriate; and

h. Agreement not to balance bill any employee or employer. Employees shall not be required to contribute a copayment or meet any deductibles.[42]

Employer asserts that the first sentence of Section 2322D(a)(1) creates a requirement that the Delaware Certification be current. Specifically, Employer points to the terms "shall" and "be." Employer argues that the term "shall" is mandatory and that the term "be" is present tense, thereby necessitating a current certification.

Section 2322D(a)(1) outlines the minimum requirements necessary to obtain a Delaware Certification, ranging from having a current license to practice to providing proof

---

[42] 19 *Del. C.* § 2322D(a).

of adequate, liability insurance.[43]  Specifically, the last sentence of Section 2322D(a)(1) states that "[a] health-care provider *shall be certified* only upon meeting the following minimum certification requirements."[44]  But Dr. Bose's Delaware Certification did not lapse due to his failure to meet one of the six *minimum* requirements.  There is no question that at the time of Wilson's Second Cervical Surgery, Dr. Bose met the minimum requirements necessary to obtain a Delaware Certification.

Instead, this case focuses on the second portion of Section 2322D(a), which sets forth the terms and conditions a healthcare provider must agree to in order to be certified.  Section 2322D(a)(2) provides that "[t]he certification rules shall require that any healthcare provider *to be certified* agree to the following terms and conditions" which includes completion of State-approved education courses every two years.[45]  The terms "shall" and "be" suggest that these are requirements that a healthcare provider must agree to in order to be certified.  Yet the statute is silent as to the consequences of failing to adhere to the terms and conditions listed in Section 2322D(a)(2).

Employer argues that the requirements are of an *ongoing* nature, and therefore, the provider must fulfill these ongoing requirements in order to keep her certification active.  This interpretation is consistent with the statute's plain language.  Although the statute's language weighs most heavily in the analysis, three factors weigh in Wilson's favor,

---

[43] *See* 19 *Del. C.* § 2322D(a)(1)(a)-(f).

[44] 19 *Del. C.* § 2322D(a)(1) (emphasis added).

[45] 19 *Del. C.* § 2322D(a)(2) (emphasis added).

namely: (1) the Act's remedial purpose; (2) the fact that *Wyatt* and *VanVliet* are distinguishable; and (3) the prior two IAB decisions. We discuss each in turn.

### 1. *The Remedial Purpose of the Act*

Weighing against this plain language argument is the remedial purpose of the Act, which might suggest that a temporary lapse should not result in a lack of coverage. "In general, the construction given to a statute by the state agency charged with the statute's enforcement is accorded great judicial deference, so long as the construction is reasonable and does not contradict the plain language of the statute."[46] This Court has "observed that the Act is a remedial statute with a benevolent purpose."[47] This Court has also observed that the Act is to be interpreted "liberally so as to effectuate its remedial purpose."[48] Thus, we are obliged to interpret the Act in a manner that fulfills the legislative intent but avoids an "unreasonable result."[49]

"Delaware's first Workers' Compensation Statute was enacted in 1917."[50] One purpose behind the statute was "'to provide more direct and economical compensation for injured employees and create a pool of employers that would bear the burden of

---

[46] 3C Shambie Singer, Sutherland Statutes and Statutory Construction § 75:3 (8th ed. 2021).

[47] *State v. Cephas*, 637 A.2d 20, 25 (Del. 1994).

[48] *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936, 939 (Del. 1996) (citing *Cephas*, 637 A.2d at 25 ("It is the settled law of this State that the Act should be liberally construed to effectuate its purpose." (citing *Del. Tire Ctr. v. Fox*, 411 A.2d 606, 607 (Del. 1980)))).

[49] 2A Sutherland Statutes & Statutory Construction, § 45:12 (7th ed. 2008) ("It is important that a statute not be read in an atmosphere of sterility, but in the context of what actually happens when human beings go about the fulfillment of its purposes.").

[50] *Nat'l Union Fire Ins. Co. of Pittsburgh v. McDougall ex rel McDougall*, 877 A.2d 969, 972 (Del. 2005). *See also Rafferty v. Hartman Walsh Painting Co.*, 760 A.2d 157, 159 (Del. 2000); 29 Del. Laws ch. 233 (1917).

ameliorating the losses resulting from industrial accidents.'"[51] Another was "to provide prompt financial and medical assistance to injured employees and their families because the lengthy and protracted nature of tort litigation arising out of injuries to an employee often delayed such assistance for an extended period of time."[52] In most states, including Delaware, worker's compensation statutes "were adopted . . . in response to the failure of the common law to provide a quick, practical, cost effective remedy for on the job injuries suffered by workers."[53] It has become "the exclusive remedy for injured workers."[54] Given the purpose for the workers' compensation system, there is at least a colorable argument that an inadvertent lapse in certification due to an administrative error would not render otherwise reasonable and necessary treatment noncompensable.

### 2. Both Wyatt and VanVliet are Distinguishable

The Board, as well as the Superior Court, relied on this Court's precedent in *Wyatt*.[55] But *Wyatt* is distinguishable in certain respects. In *Wyatt*, this Court considered whether an uncertified doctor's surgery performed without preauthorization was compensable. The doctor in *Wyatt* had *never* obtained a Delaware Certification. Further, the doctor's office made it known to the claimant that he did not handle workers' compensation cases. In order to receive treatment and fearful that she would be unable to find immediate treatment

---

[51] *Nat'l Union Fire Ins. Co. of Pittsburgh*, 877 A.2d at 972 (quoting *Rafferty*, 760 A.2d at 159).

[52] *Id.* (quoting *Rafferty*, 760 A.2d at 159).

[53] *Id.* at 973 (quoting *Rafferty*, 760 A.2d at 159).

[54] *Del. Valley Field Servs. v. Ramirez*, 105 A.3d 396, 403 (Del. Super. 2012), *aff'd sub nom. Del. Valley Field Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013) (TABLE).

[55] B-40-41 (IAB Decision at 3-4); *Wilson*, 2022 WL 701632, at *6-7.

elsewhere, the claimant told the doctor that her injury occurred when she woke up rather than when she was at work.

This Court engaged in a detailed statutory analysis as to why a doctor must either have a Delaware Certification, seek preauthorization, or fall into the narrow exception under the Act in order to have his or her treatment deemed compensable. This Court held that because the doctor was not certified (and had never been certified), the treatment was noncompensable.[56]

In this case, the Superior Court also relied on this Court's precedent in *VanVliet v. D&B Transportation*.[57] *VanVliet* is distinguishable for the same reason. In *VanVliet*, the employee was involved in a work-related injury. The injury necessitated surgery. The employee's surgery was performed by a Maryland surgeon. The Maryland surgeon was uncertified under the Act at the time she performed the surgery, even though either most or all of the other members of her medical practice firm were Delaware certified. The Maryland surgeon also did not seek preauthorization for the surgery.

The employee sought reimbursement under the Act from his employer for the surgery performed by the Maryland surgeon. The Superior Court initially found that a lack of Delaware Certification did not act as a total bar on an employee's ability to receive reimbursement from his employer for the cost of treatment. The court remanded the matter to the IAB.

---

[56] *See Wyatt*, 81 A.3d at 1263.

[57] *Wilson*, 2022 WL 701632, at *7 n.64; *see also VanVliet v. D&B Transp.*, 105 A.3d 390 (Del. 2014).

In the interim, this Court decided *Wyatt*, which held that a claimant could not obtain reimbursement for care provided by a physician who was not Delaware certified unless the physician obtained preauthorization. When the employer appealed the Board's award of reimbursement for surgery costs in the *VanVliet* matter, the Superior Court applied *Wyatt* and reversed the Board's decision. The employee then appealed to this Court.

The employee argued that *Wyatt* was wrongly decided because there was no way to compel non-Delaware physicians to become Delaware certified. But we disagreed. This Court found that *VanVliet* could not be distinguished from *Wyatt*, and, therefore, the employee in *VanVliet* was not entitled to reimbursement because it was undisputed that the surgery was performed by a non-certified Maryland surgeon, and none of the limited statutory exceptions to the Delaware Certification requirement applied. Again, the key distinction is that in *VanVliet*, the surgeon was never certified under the Act.[58]

### 3. The Board's Precedent (Williams and Zayes) Also Supports Wilson

Wilson asserts that the Board's decision was arbitrary and capricious because it deviated from its own precedent without explanation. He argues that on two occasions, under circumstances indistinguishable from those here, the Board found that a lapse in

---

[58] We note that in footnote 5 of *VanVliet*, Chief Justice Strine stated:

> One of us believes it is a close question whether *Wyatt* was correctly decided or whether the Superior Court's different earlier interpretation in this matter is correct, in view of the complexity of the statutory provisions cand the liberal construction that is generally given to the Act. But none of us believe[s] that we should deviate from the principle of *stare decisis* given the General Assembly's ability to amend the Act if it disagrees with our interpretation in *Wyatt*.

105 A.3d at 391 n.5.

21

Delaware Certification due to an administrative error did not disqualify a provider's bills from payment. Therefore, Wilson contends that the Board abused its discretion when it failed to explain its departure from these precedents.

*Williams*, decided in 2012, appears to be the first time the Board addressed a "lapse" in a provider's Delaware Certification. In *Williams*, the State filed a motion to dismiss a claimant's petition on the basis that the medical treatment was not performed by a certified healthcare provider under the Act. The claimant sought treatment from Dr. Mann, who was previously certified under the Act. Unbeknownst to the claimant, Dr. Mann's certification had "lapsed on the dates of two of the three prescription medication refills, which represent the relief sought in the [claimant's] petition."[59] The Board denied the State's motion to dismiss.

In making this determination, the Board reviewed the certification records provided by the Health Care Payment System. From those records, the Board learned that Dr. Mann was previously certified from May 13, 2008 through May 13, 2010. Claimant sought prescription refills on June 21, 2011, and August 17, 2011. At the time of the prescription refills, Dr. Mann's certification had "lapsed" due to Dr. Mann's "fail[ure] to complete a continuing education filing to re-certify his status as a workers' compensation healthcare provider."[60]

The Board characterized this "lapse" as a "simple administrative error on [Dr.

---

[59] *Williams*, No. 1282260, at 2.

[60] *Id.* at 2.

Mann's] part, given his former and current compliance."[61] The Board stated that "[g]iven the relative newness of the regulations, which became effective in May 2008, and for which continuing education requirements would not have been necessary for Dr. Mann until at least 2010, the Board fail[ed] to find significant grounds to dismiss [claimant's] pending petition."[62] Thus, the Board concluded that "[u]nder these unique circumstances, Dr. Mann's *de minimus* [*sic*] omission in completing the continuing education filing in 2010 fail[ed] to constitute a willful disregard for the Health Care Payment System regulations and or/its purposes," and therefore "[c]laimant's pending petition should not be dismissed based on merely a procedural technicality."[63]

This case is similar to *Williams*. In his deposition, when asked why his name had been crossed off the workers' compensation website, Dr. Bose stated that "[w]ell, it was -- we have taken care of the paperwork. It was like the CME was *not filed* so we sent them the paperwork last week so they were going to take it off. We noticed that."[64]

In 2015, the Board in *Zayes* was again faced with determining whether a lapse in Delaware Certification disqualified a provider's bills from payment. During closing arguments before the Board, the employer's counsel raised the issue of whether claimant's doctor, Dr. Damon Carey, was a certified provider at the time of treatment. The Board found that, on initial questioning, Dr. Carey thought that he was certified. However, it was

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] B-28 (Dr. Bose Dep. at 28:6-11) (emphasis added).

brought to Dr. Carey's attention that his name appeared to be stricken from the list of current certified providers on the DOL website.[65] Dr. Carey testified that "he did not get the reminder e-mail to re-new his certification and he recently went online to take the required test."[66] The Board found that "in the context of this case Dr. Carey's error was *de minimus* [*sic*]," but that "at some point a continuing failure to adhere to the process may well bring different results."[67]

Although these cases bear close resemblance to the facts at issue here, we are not persuaded that we should judicially craft a *de minimis* exception to Section 2322D's requirements. In addition to our view that crafting such an exception lies within the General Assembly's province, various facts cut against creating a *de minimis* exception. Dr. Bose still had the right to practice medicine and to treat workers' compensation patients. He simply needed to get pre-authorization while de-certified. Further, we are hesitant to craft such an exception on this extremely limited record where the circumstances surrounding the lapse are largely unexplained.[68]

Moreover, distinguishing between the minimum requirements in Section 2322 D(a)(1) and the additional terms and conditions in Section 2322D(a)(2) could deemphasize the importance of staying compliant with the additional terms and conditions set out in

---

[65] *Zayes*, No. 1365817, at 15. Even though *Zayes* was decided after *Wyatt*, the Board found a *de minimis* exception anyway.

[66] *Id.*

[67] *Id.*

[68] For example, we do not know why Dr. Bose's Delaware Certification lapsed in 2019. We do not know whether he ever received notification that his continuing education requirement was not fulfilled. Nor do we know who was at fault for the administrative error.

24

Section 2322D(a)(2).   These are policy determinations better left to the General Assembly.[69]

B. *The Balance Billing Issue is Not Ripe*

Wilson contends that if his Second Cervical Surgery is found noncompensable, he will be liable to Dr. Bose for his medical bills associated with this procedure.[70] Employer responds that such a result would be inconsistent with the Act's remedial purpose and possibly Section 2322F(l)(1)'s language.  Although this issue was briefed fully here, and it was briefed before the Superior Court, the Superior Court did not address the issue.  Nor will we because no such claim has been asserted.  Any opinion by this Court would be purely advisory.[71]  Thus, the issue is not ripe.  Delaware courts will decline to exercise jurisdiction over a case unless the underlying controversy has "matured to a point where

---

[69] *See Cordero v. Gulfstream Dev. Corp.*, 56 A.3d 1030, 1037 (Del. 2012) (explaining that an "unfortunate result can only be corrected by the General Assembly, because courts lack the constitutional power to rewrite the statute").

[70] Wilson points to Section 2322(F)(l)(2) & (3) and argues that he would be responsible if this Court affirms Superior Court's decision.  Wilson contends that Section 2322F applies to medical expenses incurred in connection with a work injury irrespective of a healthcare provider's certification status, and that Section 2322F(l)(2)(a) expressly permits a healthcare provider to commence collection efforts against a claimant (an employee) once the issue of compensability is ultimately decided.  19 *Del. C.* § 2322F(l)(2)(a).  Accordingly, he argues that Section 2322F would render him liable for the medical bills associated with his Second Cervical Surgery if his second surgery is not compensable.  The Employer counters that, "[f]undamentally, the healthcare payment system provided under Chapter 19 does not permit a healthcare provider, as defined by 19 *Del. C.* § 2301(13), who is not certified as required by 19 *Del. C.* § 2322D to collect charges for those services."  Ans. Br. at 17.  Employer states that since Dr. Bose was not certified at the time he performed the surgery, his charges were not "authorized by this chapter" or the "healthcare payment system" under 19 *Del. C.* § 2322D.  *Id.*  Thus, Employer contends that Dr. Bose cannot recover these charges.

[71] *Heathergreen Commons Condominium Ass'n v. Paul*, 503 A.2d 636, 639 (Del. Ch. 1985) ("Controversies that are hypothetical and would result in only an advisory opinion are not justiciable.").

judicial action is appropriate."[72]  For these reasons, and given the undeveloped record on this issue, we decline to address it.[73]

## VI.    CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Superior Court's decision.

---

[72] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) (citing *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987)).

[73] "To address a matter before the facts surrounding the dispute are fully developed necessarily not only increases the risk of an incorrect judgment in the particular case, but risks, as well, an inappropriate or unnecessary step in the incremental law building process itself." *Schick*, 533 A.2d at 1239 (citing Wright, Miller & Cooper, Federal Practice and Procedure § 3532 (1984)).